IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
DALLAS DIVISION

CASE NO. _____
JURY

**COLLEEN SHINN-FISH**

    **Plaintiff,**

v.

**CHASE HOME FINANCE LLC d/b/a
CHASE TEXAS HOME FINANCE LLC**

    **Defendant.**

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, COLLEEN SHINN-FISH files this Original Complaint and Jury Demand complaining of Defendant J P CHASE BANK, N.A. This action is filed under the Equal Credit Opportunity Act ("E.C.O.A"), 15 U.S.C § 1691 *et seq*. Plaintiff alleges as follows.

### PARTIES

1. Plaintiff Colleen Shinn-Fish is a Texas citizen and resident of Rockwall County, Texas.

2. Defendant Chase Home Finance LLC d/b/a Chase Texas Home Finance LLC ("Chase") is a Delaware corporation and may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul St., Dallas, TX 75201

### JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this case under 15 U.S.C. § 1691e(f). Jurisdiction is proper for the other asserted claim under the doctrine of pendent jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c), because: (i) Defendant is actively doing business in this State and subject to personal jurisdiction throughout the

State; (ii) Defendant transacts business in the State and in the District because it enters into contracts with residents of the District; (iii) Defendant further transacts business in the State and in the District because it is in the business of extending credit in the District; (iv) Defendant has committed illegal acts in the District by violating the E.C.O.A., and (v) a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

5.   Chase is in the business of extending credit to individuals for the purchase, finance or re-finance of various personal transactions including home finance. Chase has accessed Plaintiff's credit report at least five times concerning the potential refinancing of her home. Those pulls to Plaintiff's credit were made on or about September 4, 2008, October 24, 2008, December 1, 2008, December 12, 2008 and January 9, 2009 by Chase and/or its agents.

6.   Plaintiff contacted Chase in response to an offer she received in the mail regarding a potential refinancing of her home loan. Plaintiff filled out a loan application that was submitted and subsequently denied. Plaintiff was told by a Chase employee that her loan would be approved and that additional applications were being made. Plaintiff was, over the course of several months, even given three closing dates by Chase. Each time a "closing" was approaching Chase would advise Plaintiff not to make her current mortgage payments. Plaintiff did not learn that she was denied on this first application until a meeting was held between Plaintiff and two Chase representatives.

7.   On or about December 12, 2008 Plaintiff met with two Chase representatives to discuss the pending applications. She was advised that on or about September 22, 2008 she was denied for the first application and that she should have been sent an adverse action letter. Plaintiff had not been send such a letter, and, in fact had a closing date scheduled with chase for the next week on December 17, 2008. A copy of the adverse action letter allegedly sent on September 22, 2008 was hand delivered to her at that time.

8.   During that same December 12, 2008 meeting Plaintiff was advised by a Chase representative that the representative had disclosed Plaintiff's information to a few third parties seeking additional

funding options. Plaintiff never gave her permission for this third party extension of credit; in fact, Plaintiff has expressly stated that she only wanted to secure financing through Chase. Plaintiff has also never received an adverse action notice from Chase or the third parties regarding this application for credit.

9. Additionally during the December 12, 2008 meeting Plaintiff was further advised by a Chase representative that the representative had resubmitted her application at least two other times to Chase for approval, and had received pre-approval. Even though Chase made these representations, there was never a pre-approval. Plaintiff did not receive adverse action letters for either of these applications.

10. On or about December 13, 2008, Chase's representatives requested that another loan application be submitted and Chase represented to Plaintiff that she would be approved. Emails went back and forth requesting more and more data and reassuring Plaintiff that approval was imminent. Plaintiff was sent an email on February 19, 2009 advising her that it was not approved. Even if this were to be counted as proper adverse action notice, there are at least three outstanding applications for credit where Plaintiff has not received adverse action notices from Chase and an undetermined number where Chase sought third-party financing for Plaintiff. Chase continued to assure Plaintiff that they could still secure financing for her and continued requesting data and making credit pulls. After the February 19th email turn-down, Chase continued to try to secure financing for Plaintiff and continued to assure her that they could obtain financing for her. Chase even requested Plaintiff provide them with her free annual credit reports, stating that would suffice so that they would not have to pull her credit again. These requests were made as recent as August and September of 2009, and Chase requested that Plaintiff allow them to make a further check of her credit. Plaintiff refused this final request.

11. When pressed on the issue of all of these credit pulls and applications, a Chase representative again provided the original September 22, 2008 adverse action letter and a April 6, 2009 adverse action letter.

12. Despite the additional submission of loan applications to Chase and a third party, Plaintiff has never received any further adverse action notices as required by the E.C.O.A. As of November 23, 2009 no additional adverse action letters have been received.

## CAUSE OF ACTION FOR VIOLATIONS OF THE
## EQUAL CREDIT OPPORTUNITY ACT

13. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

14. The failure of Defendant to provide to Plaintiff written notice for each and every denial of credit to Plaintiff for each application submitted to Defendant or a third party and to provide the disclosures mandated by 15 U.S.C § 1691(d)(2)(b) violated the E.C.O.A.

15. As a result of the above alleged E.C.O.A. violations, Plaintiff has suffered substantial actual damages in the loss of her rights to determine the basis for credit denial, her loss of the credit itself, frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

16. As a result of the above E.C.O.A. violations, Defendant is liable to Plaintiff for her actual damages pursuant to 15 U.S.C. § 1691e(a), for punitive damages of $10,000.00 against Defendant pursuant to 15 U.S.C. § 1691e(b) and for attorneys' fees and costs pursuant to 15 U.S.C. § 1691e(d).

17. Plaintiff is also entitled to equitable relief against Defendant requiring delivery of compliant notices in all future instances.

## CAUSE OF ACTION FOR INVASION OF PRIVACY BY
## INTRUSION UPON SECLUSION

18. Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

19. Defendant intentionally interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully disclosing all of Plaintiff's private financial and other information to third parties without her consent.

20 Defendant intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course applications for credit for the refinancing of Plaintiff's home.

21. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs. In fact, Plaintiff had expressly told Defendant that she only wanted to secure financing through Chase. The disclosure of Plaintiff's personal, financial and other information to third parties was done despite Plaintiff's request that only Chase see that information.

22. These intrusions and invasions by Defendant occurred in a way that would be highly offensive to a reasonable person in that position.

23. As a result of such invasions of privacy, Plaintiff is entitled to actual damages and exemplary damages in an amount to be determined at trial from Defendant.

## JURY DEMAND

24. Plaintiff requests a trial by jury against Defendant on all issues triable as a matter of right.

WHEREFORE, Plaintiff requests that Defendant be cited to appear and answer in this action, and that upon final trial of this cause, the Court award judgment against the Defendant for its actual, punitive and statutory damages; equitable relief; reasonable attorneys fees; costs of the court and such other and further relief as the Court finds necessary and proper.

Respectfully submitted,

By:   /s/ Bonner C. Walsh
      Jeffrey L. Weinstein
      State Bar No. 21096450
      Bonner C. Walsh
      State Bar No. 24051766

JEFFREY L. WEINSTEIN, P.C.
518 East Tyler Street
Athens, Texas 75751
(903) 677-5333
(903) 677-3657 – facsimile

**COUNSEL FOR PLAINTIFFS**